***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant RskCo Claim Services was the carrier on the risk.
3. Plaintiff was employed by defendant-employer on July 8, 1993 as a distribution person. He was employed by defendant-employer from July 15, 1991 until October 1993. Plaintiff's last day of actual work was July 15, 1993.
4. On or about July 8, 1993, plaintiff sustained an admittedly compensable injury when he was operating a stock picker and was hit from the rear by another stock picker and plaintiff felt back pain and a sharp pain between his shoulders.
5. Defendants have paid benefits to plaintiff as a result of his July 8, 1993 injury, pursuant to a Form 21 Agreement approved by the Commission on June 13, 1994.
6. On November 2, 1993, Dr. Douglas McFarlane of Cape Fear Orthopaedic Clinic in Fayetteville, N.C., determined that plaintiff had reached maximum medical improvement and assigned a 5% permanent partial disability rating to plaintiff's back.
7. Prior to payment of a permanent partial disability rating, plaintiff experienced an exacerbation of back pain and requested and received approval from defendants for additional medical treatment.
8. Plaintiff has not yet been compensated for any permanent partial disability.
9. Defendants have continued to pay medical benefits for on-going medical treatment since 1993 up to and including treatment rendered in 2003.
10. On July 8, 1993, plaintiff's average weekly wage was $484.00, yielding a compensation rate of $322.68.
11. The issues for determination are:
a. Whether plaintiff is entitled to any temporary total disability benefits as a result of his July 8, 1993 compensable injury?
b. Whether plaintiff is entitled to any medical benefits as a result of his July 8, 1993 compensable injury?
c. Whether defendants are barred by equitable estoppel and/or latches to deny plaintiff further benefits on the basis of another injury, which allegedly occurred on October 11, 1994?
d. Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
e. Whether plaintiff's exacerbation of his back injury resulted from an independent intervening cause attributable to his own intentional conduct, rendering the exacerbation non-compensable?
7. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit 1 contains plaintiff's medical records, Industrial Commission forms and answers to discovery requests.
 *********** MOTION RULING
Plaintiff's Motion to Bar Defendants' Defense of Intervening Cause on grounds of estoppel and/or latches is hereby DENIED.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old. On July 8, 1993, plaintiff was employed by defendant-employer as a stock picker. On that date, plaintiff was hit in the back by another stock picker and suffered an injury to his back.
2. Defendants accepted plaintiff's claim as compensable and entered into a Form 21 Agreement to pay temporary total disability compensation for necessary weeks. Defendants paid plaintiff indemnity compensation from July 8, 1993 through November 4, 1993.
3. Plaintiff received treatment from Dr. Douglas McFarlane of Cape Fear Orthopaedic Clinic in Fayetteville, North Carolina. He was diagnosed with a moderately severe muscle strain in the dorsal spine and written out of work. Plaintiff was given medication and entered physical therapy.
4. In August 1993, plaintiff began work hardening. He continued to complain of lower thoracic and upper lumbar soreness and stiffness and was continued out of work.
5. Plaintiff continued to receive treatment from Dr. McFarlane and on October 15, 1993 reported that he was still experiencing back spasms. Plaintiff was encouraged to change jobs to one that did not require heavy lifting and was continued out of work through November 2, 1993. On November 2, 1993, Dr. McFarlane opined that plaintiff had reached maximum medical improvement despite continuing back spasms. He rated plaintiff with a 5% permanent partial disability rating to his back and imposed permanent restrictions of no prolonged standing, repetitive bending or lifting or carrying more than 25 pounds.
6. On November 4, 1993, plaintiff began working for Cape Fear Harley Davidson as a parts manager. Plaintiff's job did not require heavy lifting, but did require frequent standing on a concrete floor. Plaintiff continued to experience some back pain in his new employment.
7. Plaintiff received a second opinion of his permanent partial disability rating from Dr. Steven P. Montgomery on January 17, 1994. At that time, plaintiff was taking 400 mg of Motrin daily for continuing back pain. Plaintiff also reported to Dr. McFarlane that he continued to have aching in his back with stiffness, especially in the morning, and that he occasionally awoke during the night with back pain. Dr. Montgomery diagnosed plaintiff with a thoracolumbar strain. He recommended that plaintiff increase his dosage of anti-inflammatories and continue home physical therapy. Dr. Montgomery opined that plaintiff had reached maximum medical improvement and found no evidence of permanent impairment.
8. On October 11, 1994, plaintiff presented to Dr. Eric Burger of Doctor's Urgent Care Center with complaints of back pain. The office notes state that the onset of plaintiff's back pain began on July 8, 1993 and that he experienced an increase in pain after bending over to pick up a 70 pound object. Plaintiff felt a pop in his mid to low back with pain radiating down his left leg and up his back into his neck.
9. Plaintiff disputes the information contained in Dr. Burger's note. Plaintiff contends that he felt the pop when he tried to stand and that he did not attempt to lift a 70-pound object. Plaintiff maintains that he explained to Dr. Burger that he was required to lift heavy objects in his prior employment and that Dr. Burger mistakenly assigned that information to plaintiff's injury of the previous day.
10. Dr. Burger diagnosed plaintiff with some degenerative disc disease, anterolaterally at C6-7. Plaintiff continued to treat with Dr. Burger and on December 5, 1994, he was referred by Dr. Burger to an orthopedist. Defendants continued to pay for plaintiff's medical treatment.
11. On December 20, 1994, Plaintiff was seen by Dr. David P. Fedder at Pinehurst Surgical Clinic. Plaintiff reported that he was injured at work in July 1993 and that his back pain had continued since that time. Plaintiff was currently experiencing some low back and left buttock pain, but denied any radiation pain in the hands, fingers, feet or toes. Dr. Fedder diagnosed plaintiff with chronic low back pain, with a secondary diagnosis of degenerative disc disease of the cervical spine. Dr. Fedder recommended a bone scan to rule out any intrinsic underlying bony abnormality, but opined that given the longevity of plaintiff's symptoms he did not expect them to resolve and suggested other methods of controlling the continuing pain.
12. Plaintiff's bone scan was read as normal. Dr. Fedder referred plaintiff to Dr. James E. Rice of Sandhills Orthopaedic and Spine Clinic. Plaintiff presented to Dr. Rice on March 6, 1995. Plaintiff gave a history of injuring his back at work on July 8, 1993 and did not report any intervening injuries. Dr. Rice diagnosed plaintiff with chronic lumbar strain with left sciatica.
13. Plaintiff continued to treat with Dr. Rice. On June 30, 1997, Dr. Rice opined that plaintiff had reached maximum medical improvement and rated plaintiff with a 3% permanent partial disability rating to his back based upon continuing symptomology.
14. On June 24, 1998, plaintiff returned to Dr. Rice with increased back and leg pain. Dr. Rice ordered an MRI of the lumbar spine, which was performed in September 1998 and demonstrated some central bulging at the L5-S1 level. Over the next several months, Dr. Rice provided a series of epidural injections which proved unsuccessful and plaintiff sought a second opinion from Dr. Dion Arthur of Premier Orthopedics 
Spine Specialists.
15. Plaintiff presented to Dr. Arthur on April 5, 1999 with pain predominantly on the left side of the upper lumbar region with some lower back pain. Dr. Arthur reviewed the September 1998 MRI and noted a moderately large disk herniation with disk space collapse at the L1-2 intervertebral disk space, some decreased disk signal at the L3-4 level with a small subligamentous disk herniation, and an L5-S1 intervertebral disk decreased signal with subligamentous disk herniation. Dr. Arthur recommended discograms of the L1-2, the L3-4 and L5-S1 levels to "see which level the pain was concorded in." He opined that if the level could be determined, an anterior discectomy and fusion could help to eliminate the majority of plaintiff's symptoms.
16. On March 29, 2000, plaintiff moved for a change in treating physician from Dr. Rice to Dr. Arthur. Defendants opposed the motion. By Order of the Executive Secretary's Office dated April 17, 2000, plaintiff was allowed to change treating physicians to a physician on whom the parties mutually agreed. Dr. Rice and Dr. Arthur were instructed to summarize their findings and recommendations and to state an opinion on whether plaintiff's low back problems were related to the original compensable injury. These statements were to be provided to plaintiff's new physician. While no appeal from the Order was filed, it appears that the parties were unable to agree on a treatment provider and plaintiff continued to treat with Dr. Rice.
18. On August 1, 2001, plaintiff presented to Dr. Rice and reported that he had been in a motor vehicle accident three weeks earlier, which had resulted in a significant increase in back pain. Dr. Rice ordered an MRI, which showed dessication changes at the L1-2, L3-4 and L5-S1 levels. Dr. Rice diagnosed plaintiff with lumbar disc disease with thoracolumbar strain and has continued to treat plaintiff conservatively since that time.
19. Defendants authorized a re-evaluation by Dr. Arthur. On September 9, 2002, Dr. Arthur reviewed the discograms and determined that surgery would not resolve plaintiff's symptoms. He further opined that plaintiff has had the maximum improvement he could expect and that he would require chronic pain management as well as intermittent use of an external spinal brace for any increase in activities over time. Dr. Arthur further stated that plaintiff might reach a point where he is not a suitable candidate for employment. Defendants authorized both the brace and treatment for pain management.
20. While plaintiff was attempting to schedule pain management, he returned to Dr. Rice on February 17, 2003 for a follow-up visit. Dr. Rice noted that plaintiff's pain had markedly increased. He recommended an additional MRI and wrote plaintiff out of work until March 10, 2003. Defendants denied indemnity benefits and plaintiff filed the current action.
21. Dr. Rice reviewed the MRI results on March 26, 2003. The MRI demonstrated an increase in the size of the T11 disc prominence. Dr. Rice diagnosed plaintiff with thoracic disc disease and wrote him out of work through April 1, 2003. Due to plaintiff's continuing pain symptoms, Dr. Rice subsequently continued to write plaintiff out of work in short increments through January 15, 2004. Plaintiff has not returned to work since February 17, 2003.
21. Dr. Rice opined that plaintiff's ongoing problems are related the original work injury of July 8, 1993, and may have been "aggravated to a minimal degree" by the automobile accident of July 2001. He does not recommend surgical intervention, but opined that plaintiff will need pain management. Dr. Rice further opined that plaintiff's permanent partial disability rating should stay at 3% and that hopefully plaintiff would be able to return to some light duty work with restrictions. Defendants have not paid plaintiff compensation pursuant to his rating.
22. Defendants contend that plaintiff's lifting of a 70 pound object in contravention of his permanent lifting restrictions on October 10, 1994 as reported in Dr. Burger's notes should bar further recovery by plaintiff. Dr. Burger had no independent recollection of the office visit and relied solely upon his notes. No other testimony, including that of plaintiff's wife, sister and former manager at Harley Davidson, nor any subsequent medical notes, corroborate the contention that plaintiff suffered a separate injury to his back lifting an object. Further, there is no testimony that contradicts plaintiff's evidence that his back pain continued between his last visit with Dr. McFarlane in November 1993 and his October 11, 1994 visit with Dr. Burger. Therefore, based upon the greater weight of the evidence, the undersigned assigns little weight to that portion of Dr. Burger's note that alleges plaintiff injured himself lifting a 70-pound object.
23. Defendants have not defended plaintiff's claim unreasonably.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on July 8, 1993. Defendants have paid plaintiff medical and indemnity compensation pursuant to a Form 21 Agreement through February 17, 2003. N.C. Gen. Stat. §97-2(6).
2. Plaintiff's current condition is causally related to his compensable injury of July 8, 1993 and is not the result of an intervening cause attributable to plaintiff's own intentional conduct. As a result of the compensable injury, Dr. Rice took plaintiff out of work beginning on February 17, 2003 and continuing; therefore, plaintiff is entitled to temporary total disability compensation at the rate of $322.68 per week from February 17, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §97-2(19).
4. Defendants did not defend this claim without cause and plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $322.68 per week for the period from February 17, 2003 through the present and continuing. As much of said compensation as has accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from the lump sum due plaintiff and paid directly to counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendants shall pay the costs.
This the 18th day of November 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/mb